AAS/DMP:ICR/JEA/PAS
F. #2020R00514

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

TIMOTHY AMERMAN,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

(18 U.S.C. §§ 231(a)(3), 371 and 2)

No. 20-M- 514

EASTERN DISTRICT OF NEW YORK, SS:

ELAINE M. SILADI, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

COUNT ONE
(Civil Disorder)

On or about May 29, 2020, within the Eastern District of New York and elsewhere, the defendant TIMOTHY AMERMAN, together with others, committed and attempted to commit acts to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

(Title 18, United States Code, Sections 231(a)(3) and 2)

COUNT TWO
(Civil Disorder Conspiracy)

On or about May 29, 2020, within the Eastern District of New York and elsewhere, the defendant TIMOTHY AMERMAN, together with others, conspired to commit acts to obstruct, impede, and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function, contrary to Title 18, United States Code, Section 231(a)(3).

(Title 18, United States Code, Section 371)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the Joint Terrorism Task Force ("JTTF"). I have been an agent for approximately twelve years. As a Special Agent, I have investigated numerous matters during the course of which I have conducted physical and electronic surveillance, interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to secure relevant information regarding a variety of crimes. I am familiar with the facts and circumstances set forth below from my personal review of records, documents and other physical evidence

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. Statements attributed to individuals in this Affidavit are set forth in sum, substance and in part, unless otherwise indicated.

obtained during this investigation, and from communications and information provided to me by fellow agents and other government personnel with knowledge related to this investigation.

I. SAMANTHA SHADER's Attack On Police In Brooklyn

2. On or about May 29, 2020 at approximately 11:00 p.m., an individual, later identified as SAMANTHA SHADER, approached a New York City Police Department ("NYPD") vehicle parked in the vicinity of Eastern Parkway and Washington Avenue in Crown Heights, Brooklyn.

3. A video provided to law enforcement from a witness captured the events. The video initially shows SAMANTHA SHADER light an incendiary device – specifically, a bottle containing an incendiary chemical (sometimes referred to as a "Molotov cocktail" device) – while an unidentified male attempts to shield SAMANTHA SHADER from onlookers. SAMANTHA SHADER thereafter threw the Molotov cocktail at the NYPD vehicle, which was occupied by four NYPD officers. The Molotov cocktail shattered two windows of the NYPD vehicle on impact and caused internal damage to the NYPD vehicle. An image of SAMANTHA SHADER throwing the Molotov cocktail is included below.



4. The NYPD vehicle is the property of the NYPD and the New York City government. Both the NYPD and New York City government conduct business in interstate commerce, for instance by purchasing vehicles and other equipment and supplies in interstate commerce. The activities of the NYPD and the New York City government in enacting and enforcing laws also affect interstate commerce. The NYPD and the New York City government are also the recipients of financial assistance from the federal government, including grants from the U.S. Department of Homeland Security.

5. After observing SAMANTHA SHADER throw the Molotov cocktail, officers in the NYPD vehicle pursued SAMANTHA SHADER while she attempted to flee. The same officers then apprehended SAMANTHA SHADER and placed her under arrest.

6. While the officers arrested SAMANTHA SHADER, an individual later identified as SAMANTHA SHADER's younger sister ("Sister-1"), jumped on the back of one of the officers arresting SAMANTHA SHADER in an attempt to prevent the arrest, and was herself arrested by the NYPD. At the time of her arrest, Sister-1 was in possession of a backpack that was seized and searched incident to her arrest. NYPD officers recovered from the backpack, among other things, spray paint, a metal lug wrench, a metal jack crank, rope, bandanas, and an Apple iPhone.

7. The same witness who recorded the video of SAMANTHA SHADER throwing the Molotov cocktail at the NYPD vehicle also provided to the NYPD a glass Bulleit bourbon whiskey bottle that the witness said he/she had picked up off the ground after SAMANTHA SHADER threw it at the NYPD vehicle.

8. Following her arrest, SAMANTHA SHADER waived her Miranda rights and agreed to speak to law enforcement in a series of video-recorded interviews. During

those interviews, SAMANTHA SHADER provided the following information in sum, substance and in part:

9. SAMANTHA SHADER admitted to possessing the Molotov cocktail and throwing it at the NYPD vehicle, but denied that she had ever constructed a Molotov cocktail herself. SAMANTHA SHADER stated that she was approached on the street and given "the bottle" by a black male, who was in a group with one other black male and a black woman. SAMANTHA SHADER described the man who handed the bottle to her as a "thicker guy" with hair in "skinny dreads" that were different colors. SAMANTHA SHADER described the second man as smaller than the first and wore a hat that concealed his hair. SAMANTHA SHADER described the woman as thin with "poofy" hair formed into a pony tail. SAMANTHA SHADER stated that all three people in the group wore dark colored clothing and bandanas over their mouths.

10. SAMANTHA SHADER denied knowing any of the three people that purportedly gave her the Molotov cocktail. SAMANTHA SHADER stated that the man who handed her the bottle told her that they were going to prove a point, and SAMANTHA SHADER stated that she felt important at the time she took the bottle because she was the only white person in the area.

11. SAMANTHA SHADER further stated that during the march she picked up a hammer off the ground and carried it with her because people were being "nasty," including by screaming and pushing, and she "did not have anything else."

12. SAMANTHA SHADER stated that she and Sister-1 had learned on or about the morning of May 29, 2020 of the march planned in New York City for later that day, likely from Facebook. SAMANTHA SHADER stated that she, Sister-1, and a friend who also

wanted to attend the march ("Friend-1") agreed to meet at a Wal-Mart in Fishkill, New York to carpool to New York City for the protest. SAMANTHA SHADER stated that she and Sister-1 drove to the Wal-Mart to meet Friend-1, parked their vehicle in the Wal-Mart parking lot, and made the rest of the journey to New York City as passengers in Friend-1's vehicle.

13. SAMANTHA SHADER denied being a member of any political group, but stated that on social media, including Facebook, she sometimes shared and re-posted content advocating violence, and gave the example of a Facebook post that opined that "Black people should be allowed to burn down the country they built for free." SAMANTHA SHADER stated that she did not believe that black people should actually set fires, but rather that they should receive better treatment. SAMANTHA SHADER denied holding any animosity against police, but admitted that she had used black spray paint to tag "ACAB" (an acronym for "All Cops Are Bastards") on two traffic cones during the protest on May 29, 2020.

14. A grand jury in the Eastern District of New York subsequently returned an indictment charging SAMANTHA SHADER with seven offenses relating to her May 29, 2020 Molotov cocktail attack on the NYPD. See Indictment, United States v. Samantha Shader, No. 20-CR-202 (DLI), ECF Dkt. No. 9 (E.D.N.Y. June 11, 2020). This case is currently pending.

## II. The Defendant TIMOTHY AMERMAN's Role In SAMANTHA SHADER's Attack

15. Law enforcement agents subsequently conducted a judicially authorized search of the vehicle that SAMANTHA SHADER and Sister-1 drove to meet Friend-1 on May 29, 2020. From the passenger compartment of the vehicle agents recovered, among other things, a handwritten note (the "Note") addressed to "Sam + [Sister-1]." The note stated "I

found a few more glass bottles Than I thought I had, Though still not many. I'm giving you my mask in hopes That helps. Wish I had more. There's also a bag in here for you. BE SAFE Please. Really[.] Good Luck, - Love Tim." The vehicle also contained a moving violation dated September 20, 2019, issued to Sister-1.

16. An FBI Forensic Examiner from the Latent Print Operations Unit at the FBI Laboratory in Quantico, Virginia examined the Note for latent fingerprints. The Forensic Examiner determined that there was one palm print on the note identified to SAMANTHA SHADER and nine latent fingerprints on the note identified to the defendant TIMOTHY AMERMAN.

17. Law enforcement agents subsequently conducted open source online research in Facebook for the name "Timothy Amerman" and identified a Facebook page for an individual bearing the name "Tim Amerman". The Facebook page listed the name "Tim Amerman" and a photograph of what appears to be an individual matching the age, race and general appearance of the defendant TIMOTHY AMERMAN. Facebook, including its online social media platform, is a business that operates in interstate commerce.

18. Several of defendant TIMOTHY AMERMAN's recent public posts to his Facebook account indicate his support for rioting and related criminal conduct.

a. For example, on or about May 28, 2020, the defendant TIMOTHY AMERMAN posted that "[b]lack people have every right to burn down a country they built for free." Notably, this post contained the same message that SAMANTHA SHADER admitted during her post-arrest interview that she had posted or re-posted on Facebook.

b. In a separate post on or about May 28, 2020, the defendant TIMOTHY AMERMAN re-posted the following Facebook post posted by a different Facebook user:

> riots DO work.
>
> riots ARE rational.
>
> riots ARE NOT evidence of us being unorganized in our demands but evidence of us being profoundly human and tired.
>
> rioting, rebellion, and revolution all look the same … especially at the beginning.

c. On or about May 29, 2020, the night of SAMANTHA SHADER's Molotov cocktail attack, the defendant TIMOTHY AMERMAN had the following exchange with another Facebook user that was publicly posted:

> AMERMAN: . . . as little as having these conversations really does.. I'd like to believe were on the right side of history.. I'm constantly disgusted looking at facebook. I was invited to go for a ride to NYC to get saucey, and I'm contemplating it.
>
> Unknown Female: looks to be a saucy night- did you go down?
>
> AMERMAN: nope. But I kitted out some others
>
> Unknown female: good man

III. Law Enforcement Interviews Of TIMOTHY AMERMAN

19. On or about July 2, 2020, and again on July 3, 2020, the defendant TIMOTHY AMERMAN agreed to speak with law enforcement agents and officers. Before conducting each interview, the agents advised AMERMAN that his participation in the interview was voluntary and that he was free to leave or terminate the interview at any time.

During the interviews, AMERMAN provided the following information in sum, substance and in part:

20. On or about May 29, 2020, the day SAMANTHA SHADER threw the Molotov cocktail at the NYPD vehicle occupied by four NYPD officers, SAMANTHA SHADER contacted AMERMAN through Facebook Messenger and invited AMERMAN to join SAMANTHA SHADER and Sister-1 in their trip to New York City to join the protest march. Specifically, AMERMAN stated that SAMANTHA SHADER asked AMERMAN, in sum and substance, whether he wanted to go down to the City to cause some hell. AMERMAN stated that he declined SAMANTHA SHADER's invitation to go with them to New York City. AMERMAN stated that SAMANTHA SHADER asked AMERMAN if he could provide her with bottles, and he agreed to do so.

21. Before SAMANTHA SHADER and Sister-1 drove to AMERMAN's home in Saugerties, New York to pick up the bottles AMERMAN had agreed to provide, AMERMAN stated that he collected a bag of items to leave for SAMANTHA SHADER and Sister-1, thinking that they would arrive after he had left for work. AMERMAN admitted writing the Note and stated that he had planned to leave the Note with the bag, two cans of paint, and his recycling bin containing glass bottles outside of his house for SAMANTHA SHADER and Sister-1 to take. AMERMAN stated that he placed in the bag masks, rope, plastic baggies, and some marijuana for SAMANTHA SHADER and Sister-1.

22. Before AMERMAN left for work, however, SAMANTHA SHADER and Sister-1 arrived at AMERMAN's house. AMERMAN stated that SAMANTHA SHADER went through his recycling bin and took glass bottles from the bin. Although AMERMAN stated that he did not see which specific glass bottles SAMANTHA SHADER took from the

bin, he stated that he knew there had been a glass bourbon bottle and glass beer bottles in the recycling bin. At one point during his encounter with law enforcement, AMERMAN told a law enforcement officer that Bulleit bourbon is his bourbon of choice. Notably, as detailed above, following SAMANTHA SHADER's May 29, 2020 Molotov cocktail attack on the NYPD, a witness provided to law enforcement a glass Bulleit bourbon whiskey bottle that the witness saw SAMANTHA SHADER use as a vessel for the Molotov cocktail that she threw at the NYPD vehicle. AMERMAN stated that SAMANTHA SHADER also took a hammer from his tool bucket. When asked whether he had provided a tire iron to SAMANTHA SHADER, AMERMAN stated that he had discovered approximately one week before the interview that his tire iron was missing.

23. When he was asked what he thought SAMANTHA SHADER and Sister-1 planned to do with the paint and glass bottles that he provided to them, the defendant TIMOTHY AMERMAN stated that he believed that SAMANTHA SHADER planned to use them as projectiles to throw at police and counter-protesters at the protest march in New York City. TIMOTHY AMERMAN further stated that he did not think that SAMANTHA

SHADER would use the glass bottles to create Molotov cocktails or to kill police officers, but he admitted giving SAMANTHA SHADER ten dollars for "gas."

WHEREFORE, your deponent respectfully requests that an arrest warrant issue so that the defendant TIMOTHY AMERMAN may be dealt with according to law.

ELAINE M. SILADI
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable telephonic and electronic means
pursuant to Federal Rule of Criminal Procedure 4.1, this
3rd day of July, 2020

Steven Tiscione

THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK